# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | PAUL E. PLUNKETT | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 2000 C 6423 | DATE | 12-8-00 |
| CASE TITLE | Ricky Bell (N-20653) v. Roen A. Isham, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for leave to file in forma pauperis is granted. The court orders the trust fund officer at plaintiff's current place of incarceration to deduct $36.15 from plaintiff's account for payment to the clerk of court as an initial partial filing fee and make further deductions and payments as set forth herein. The clerk shall send a copy of this order to the trust fund officer at Hill Correctional Center. This action is dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

(11) ■ For further detail see order attached to the original minute order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 12 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 5 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 DEC -8 PM 2:39 | DEC 11 2000 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

DEC 1 2 2000

RICKY BELL (N-20653), )
)
Plaintiff, )
) No. 2000 C 6423
v. )
) Judge Paul E. Plunkett
ROEN A. ISHAM, et al. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricky Bell, an inmate in the custody of the Illinois Department of Corrections (IDOC) at Hill Correctional Center, filed this pro se civil rights action against IDOC employees at Stateville Correctional Center where he had been previously confined. Bell names as defendants the Stateville Personal Property Clerk, Roen A. Isham, Assistant Warden Jerome Springborn, Correctional Sergeant Shepard and Correctional Officer Warr. Bell's motion for leave to proceed in forma pauperis is granted.[1]

Under 28 U.S.C. § 1915A the court is required to review complaints filed by prisoners against officers or employees of governmental entities and dismiss any portion of the complaint it finds frivolous, malicious, or fails to state a claim upon which relief may be granted. The court assumes that in determining whether the complaint states a claim upon which relief may be granted that it is to apply the standards employed in deciding a motion to dismiss under Rule 12(b)(6): the plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *LeBlang Motors, Inc. v. Subaru of America, Inc.*, 148 F.3d 680, 690 (7th Cir. 1998). However, the court is not to ignore any facts set forth in the complaint that undermine the plaintiff's claim, nor give any weight to unsupported conclusions of law. *Id.* Exhibits attached to a complaint are treated as part of the complaint for all purposes. Rule 10(c), Fed.R.Civ.P.

---

[1] Pursuant to 28 U.S.C. § 1915(b)(1), Bell is assessed an initial partial filing fee of $36.15. The trust fund officer at Bell's current place of incarceration is ordered to collect, when funds exist, the partial filing fee from Bell's trust fund account and pay it directly to the clerk of court. After payment of the initial partial filing fee, the trust fund officer at the correctional facility where Bell is confined is directed to collect monthly payments from Bell's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Bell's trust fund account shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $150 filing fee is paid. Payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., and shall clearly identify Bell's name and the number assigned to this action. The clerk shall send a copy of this order to the trust fund officer at Hill Correctional Center.

## ALLEGATIONS OF THE COMPLAINT

In 1998 a new policy at Stateville drastically limited the amount of personal property inmates were permitted to keep in their cells. *See Torres v. Edgar*, 98 C 3747, 1999 WL 160066 (N.D. Ill. 1999); *Parker v. DeTella*, 98 C 0644, 98 WL 164817(N.D. Ill. 1998), *appeal dismissed*, 215 F.3d 1330,(table), 2000 WL 517909 (7th Cir. 2000). Inmates could pay to have their excess property mailed out, or arrange for friends or family to pick it up. Property not picked up or mailed would be destroyed.

Bell alleges that on June 2, 1998, he turned over three boxes of excess personal property to Sergeant Norton (who is not a defendant) and gave him a money voucher for the cost of shipment. After two months had passed and Bell's family had not received the property, Bell filed a grievance on August 25, 1998. Bell's correctional counselor responded on August 27, stating that she had located his property and that Bell needed to send her a money voucher to cover the cost of shipment. Bell did so.

Bell then decided he wanted his property picked up instead, and on September 22, 1998, asked that his property be made ready to be picked up by his family on September 25. On September 23, Bell's counselor wrote back, saying that Bell's family had to contact Isham, the personal property manager, and give her one week's notice to arrange for pickup. Since Bell could not give one week's notice for a September 25 pickup, he assumed his property would not be put out for pickup.

Bell apparently also assumed that since he had already paid for postage, his property would be mailed in accordance with his original instructions. It was not. On October 12, 1998, Bell filed another grievance, stating that although he had been told that his property had been picked up September 25, his family had not visited that day. He asked where his property was, and again asked that it be sent to his home. The counselor's response dated the next day, October 13, stated that Bell's property had been taken to the "sallyport" on September 25 for pickup, and that a money voucher had been given to Correctional Officer Warr, who had stated that he would arrange for the property to be mailed.

When his family still did not receive his property, Bell filed another grievance on November 9, 1998. In response, grievance officer Judy Welsh reported that Bell's property was still at the sallyport. She recommended that Personal Property staff ensure that the property be sent out. On November 18, 1998, the Warden of Stateville concurred in this disposition.

2

For some reason it wasn't done. Bell states that from November 18, 1998 to October 6, 1999, he heard nothing. On that date he sent copies of his prior grievance to Assistant Warden Springborn and to Donald N. Snyder, Jr., Director of IDOC. Springborn forwarded the letter to Isham, asking her to respond.

Isham stated that the property had been taken to the sallyport on September 25, 1998. She said the only money voucher she recalled receiving was received on about October 15, 1998, after the property had been taken to the sallyport for pickup. She stated that the normal procedure is for property to be transported to the sallyport for pickup; if it is not picked up at the appointed time it remains at the sallyport for two weeks and is then destroyed. She reported that the property was no longer at the sallyport and had not been returned to personal property, leaving the inference that it had been destroyed. Isham stated that Bell had a choice, he exercised it in ordering arrangements for a pickup on September 25, 1998, and "his end didn't hold up." Because his family had not arrived, Bell could not complain; "Mr. Bell, therefore, has no issue."

The institutional grievance officer, Georgia Schonauer, in a report dated October 12, 1999, followed Isham's response, adding that "available information indicates that the items were considered contraband. The Department assumes no liability for contraband items."

Bell appealed his grievance to the IDOC Administrative Review Board, pointing out that most of the lost property was not contraband. On June 7, 2000, the Administrative Review Board concluded that "the issue was appropriately addressed by the institutional administration" and Director Snyder concurred in the denial of the grievance.

## ANALYSIS

Isham's response did not explain why Bell's property, which according to the grievance officer's November 13, 1998 report was still at the sallyport, was not mailed out at that time. Isham is listed as having been sent a copy of the grievance officer's report directing the personal property department to mail out Bell's property. It can be inferred that as a result of someone's negligence, or worse, Bell was deprived of his property.

This does not, however, give Bell a federal claim. The random and unauthorized taking of property by a state official, intentional or not, is not actionable under 42 U.S.C. § 1983 as long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984); *Dougherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). Because the Illinois Court of Claims provides an adequate post-deprivation remedy, Bell has no constitutional

3

claim in this court for the loss or confiscation of his property. *Stewart v. McGinnis*, 5 F.3d 1031, 1035-36 (7th Cir. 1993).

Bell, however, alleges more. He alleges that the defendants deliberately caused his property to be destroyed in retaliation for his complaints. An action that would not violate a prisoner's constitutional rights becomes actionable when it is done in retaliation for filing a grievance, because the right to seek redress is independently protected by the First Amendment. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). A complaint states a claim for retaliation when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988).

Bell makes the following allegations in support of his claim of retaliation (paragraph numbers are taken from the complaint):

> 17.) Between the time frames of August 25th 1998 through October 9, 1999 defendants Warr, and Isham, became very angry at the plaintiff as a direct result of the grievances and letters that the plaintiff presisted [sic] in filing complaining about his property.
>
> 18.) As these grievances and letters, exposed the fact that these defendants(Warr, and Isham) were neglecting their duties. and the plaintiff's complaints reached these defendants supervisors.
>
> 19.) And as a means of getting back at the plaintiff ... the defendants caused, and/or directed that the plaintiff's property be destroyed.
>
> ************
>
> 26.) Defendant Springborn knew or should have known that his staff at the personal property department was engaging in prohibited, retalitory [sic] acts against the plaintiff, and he took no corrective actions.
>
> 27.) Instead defendant Springborn, allowed Isham, Warr, and Shepard to engage in a concerted effort to destroy the plaintiff's property.
>
> 28.) The destroying of the plaintiff's property by the defendants was infact retalitory [sic] acts against the plaintiff for filing of his grievances complaining about his property.

The complaint does not state a claim against defendant Springborn, because nothing in the complaint suggests that Springborn knew of Bell's problem before he received Bell's letter of October 6, 1999. To say Springborn "should have known" is inadequate, as negligence is insufficient for constitutional torts. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996). To say Springborn "knew," when under the most liberal reading of the allegations there is no reason to suppose he knew, is not

4

enough, either. Conclusory allegations unsupported by factual assertions are not enough even under the liberal standard of Rule 12(b)(6). *Hill, supra*; *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995). Springborn cannot be charged with failure to take "corrective action," since the only inference that can reasonably be drawn from the allegations is that Bell's property had disappeared by the time Springborn became involved.

Nor does the complaint state a claim against Sergeant Shepard. Shepard appears twice in the complaint and its exhibits. He signed for Bell's property on September 25, 1998, when it was taken to the sallyport, and Isham's October 9, 1999 response to Springborn's inquiry states that "[a]s per Sergeant Shephard [sic], Mr. Bell's property is no longer at the Sallyport." Since according to the grievance officer's report of November 13, 1998, Bell's property was at the sallyport on that day, Shepard completed his task of bringing it there.

Unlike Isham and Warr, Bell does not allege that Shepard was angry at him, nor do his grievances mention his name. Although Bell states that Isham, Warr and Shepard engaged in a "concerted effort" to destroy his property, he does not allege any acts by Shepard in furtherance of this supposed conspiracy, or any facts from which an agreement with Isham and Warr can be inferred. This is not enough. *See Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)(mere conclusory allegations of a conspiracy are insufficient to survive a motion to dismiss).

Isham and Warr present a closer question. Bell alleges retaliation as a legal conclusion, but it is not a reasonable inference from the facts. Bell's property was at the sallyport on November 13, 1998, when the warden directed that it be sent to Bell. If Bell's grievances had angered Isham, she had done nothing up to that point. While Isham may have been annoyed by the instruction to send Bell his property, it is implausible to believe she resolved to disobey the directive in order to punish Bell, particularly as Bell could be expected to complain yet again if another month went by without news that his family had received his property.

Bell does not allege that he wrote any grievances between November 13, 1998 and October 6, 1999, so the retaliation, if it occurred, must have happened after Isham received her copy of Bell's October 6, 1999 letter to Springborn. If the property had already been disposed of by then, there

could have been no retaliation. If Bell's property were still at the institution, it seems implausible that Isham would have ordered it destroyed just as she was being asked to account for it. Of course, everything can be explained if Springborn were part of the conspiracy, and his question to Isham merely a charade, but there is no basis for indulging this kind of speculation.

There is a more general problem with Bell's retaliation theory. Bell alleges that the defendants did not send his property out as he requested. He alleges that because he complained, the defendants retaliated -- by not sending his property out as he requested. If inaction alone is enough to permit an inference of retaliation, a prisoner could turn any problem into a retaliation claim simply by saying that he complained to supervisors and the problem persisted. True, Bell alleges not only that the defendants did not mail his property, they "caused, and/or directed that the plaintiff's property be destroyed." But defendants could have "caused" the property to be destroyed simply by neglecting to send it, since property left unclaimed at the sallyport would routinely be destroyed.

The Court of Appeals has recently reminded district courts that they may not dismiss complaints because they find the material allegations unlikely to be true. *Johnson v. Stovall*, ___ F.3d ___, 2000 WL 1754038 (7th Cir., November 30, 2000). At the same time, the Court of Appeals has recognized that the complaint alleging retaliation must "[set] forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). While the court must accept well-pleaded facts as true, the court is not required to accept implausible inferences from these facts. And although other cases such as *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994), cited in *Johnson*, omit the word "plausibly," stating only that the plaintiff must "allege a chronology of events from which retaliation may be inferred," it has always been recognized that the district court is only required to draw *reasonable* inferences in the plaintiff's favor.

*Johnson* was itself a retaliation case. While the Court of Appeals disapproved the district judge's determination that the allegations of the complaint were false, the court did not repudiate the requirement of *Zimmerman*, decided a few months before, that retaliation be something that can be plausibly inferred from the facts, not merely pleaded as a conclusion.

6

Retaliation is not a reasonable inference here. In all probability, Warr (or someone else to whom the task was delegated) neglected to mail Bell's boxes, perhaps because he or she expected another payment voucher. At some point the boxes were thrown out in a routine cleaning of the sallyport. None of the defendants either threatened Bell with retaliation, or made any express or implied communication to Bell that retaliation had been intended, or indeed, even that anyone of the defendants was "angry." Bell cannot simply infer, without more, that someone must have been angry because he complained, and then infer that anger caused retaliation. That is at least one too many inferences to support a complaint. Bell understandably wants to find a way around the law that shunts him to the Illinois Court of Claims, but he cannot do it by way of a baseless allegation of retaliation. The complaint is accordingly dismissed for failure to state a claim upon which relief may be granted. This dismissal counts as one of Bell's three allotted dismissals under 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Paul E. Plunkett, Judge
United States District Court

DATED: 12-8-00